STATE of Missouri, Respondent,

v.

Dudley G. BROWN, Appellant.

No. 54270.

Supreme Court of Missouri,
Division No. 1.

Feb. 9, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

John Torrey Berger, Jr., James W. Herron, St. Louis, for appellant.

HIGGINS, Commissioner.

Appeal from denial, after hearing, of motion to withdraw guilty plea and to set aside judgment of conviction of robbery, first degree, with a dangerous and deadly weapon, imposed on a plea of guilty. §§ 27.25 and 27.26, V.A.M.R.

On June 21, 1967, Dudley G. Brown and his wife, Tina, with their attorney, Mr. Alan Kimbrell of the public defender's office, pleaded guilty to robbery, first degree, by means of a dangerous and deadly weapon, of Schimmel Fur Company, Clayton, Missouri, May 19, 1966. Sentence was deferred to July 7, 1967, pending a presentence investigation. On July 7, 1967, Dudley and Tina, represented by Mr. William Shaw, also of the public defender's office, were sentenced to 9-years' imprisonment on their guilty pleas.

Appellant, Dudley G. Brown, arrived in St. Louis, Missouri, in February, 1964. He was on parole from a grand larceny conviction in California and was under Missouri probation and parole supervision. In September, 1965, he was arrested for

possession of narcotics by Richard Patch, a federal narcotics agent. His indictment was suppressed and his parole continued in exchange for his consent to act as an informant which he did for the succeeding seven or eight months, during which his assistance led to some seven or eight arrests for narcotics violations. Defendant was using narcotics during this period, as he had done previously at the time of his discharge from military service in 1951. The arrests accomplished through Dudley's assistance also eliminated his supply of narcotics and he received threats against his safety and that of his family. Patch advised him about a week before the robbery that he could not send him to the federal hospital in Lexington, Kentucky, for treatment. Although denied by Patch, Dudley said Patch gave him a .45-caliber nickel-plated automatic pistol and a .38-caliber blue steel revolver for the protection of his family. Dudley said he was also given a sawed-off shotgun, but this also was denied by Patch and the weapon never appeared in evidence.

Dudley stated that for two days prior to the robbery he had no narcotics and was suffering from acute withdrawal reaction, and he suffered symptoms and illness of withdrawal following his arrest.

Dudley and his wife used the pistol and revolver to rob the Schimmel Fur Company at about 4:00 p. m., May 19, 1966, and were arrested later that afternoon at their home, at which time a search was made, and stolen furs, Tina's red wig and green dress, and the weapons were found and seized.

Dudley was taken to the St. Louis Police Department where he was interrogated for an hour and kept overnight. The following morning he was taken to the Clayton Police Department. He was interrogated further and admitted the robbery. He became ill and was taken to the county hospital and treated for his withdrawal illness.

Dudley had counsel of his own choosing, Mr. Charles Shaw, at his preliminary hearing. When he could not pay additional money he had an attorney, Mr. Kelleher, obtained by Patch, who advised him that Patch was not a defense in his situation. Mr. Kelleher withdrew as counsel and Mr. Kimbrell was appointed.

Appellant alleged as ground for relief that he was not adequately represented by counsel; that he was under a misapprehension, was misinformed, or was ignorant of the existence of defenses and his ability to suppress evidence; and that his guilty plea was involuntary.

Appellant's first contention is that the court erred in finding and ruling that he was adequately represented by counsel because he established counsel's inadequacy by showing he failed to take steps to suppress the items taken at the time of arrest, failed to move to suppress the statement of admission, failed to discover evidence and take steps to determine defenses of insanity, necessity, compulsion, or entrapment, and generally did not render effective pretrial assistance.

The court found that the charge of inadequate representation was not supported by the evidence and, specifically, with respect to these charges, found that Mr. Kimbrell spent "a great deal of time" with his client and adequately advised him of the various defenses, including many discussions with the court in an effort to get appellant into a hospital for treatment of his narcotics addiction. Appellant called Mr. Kimbrell as a witness and his testimony showed that he talked with both Dudley and Tina on several occasions. He did not discuss the robbery charge with Patch because he had no indication that Patch had any knowledge of the facts of the case. He did talk to him on two or three occasions about his client. He did not talk to Detective Morrissey of the Clayton police, but one of his associates in the public defender's office did so for him. He was informed of his client's fears, his narcotics addiction, and his story of the source of the weapons and their seizure.

His preparation prior to his client's guilty plea consisted of his interviews with Dudley and Tina. He had considered grounds for suppression of evidence and statement and had planned to file motions to that end had it been likely for the case to go to trial. Dudley suggested consideration of temporary insanity and entrapment defenses which were "open" questions prior to the plea. "I would characterize the majority of the effort as an attempt based on the request of the defendant to keep him out of the Missouri Penitentiary, and that is by the route of having him committed through any available means as a narcotic addict." He conducted research to this end; he discussed these possibilities with Judge Schaaf, the parole officer, Dr. Peterson of the Fulton State Hospital, and drew commitment petitions. The state was not willing to dismiss its charges in exchange for six months to a year in the hospital for treatment. After efforts to secure hospitalization for his client failed, Mr. Kimbrell concentrated on conditions under which disposition by guilty plea might be made. He stated to his client that if he wished his case tried he would do so, but he ultimately wished to plead guilty. Mr. Kimbrell had a professional opinion that there was no defense of "temporary insanity" because the sole question in that regard was whether the accused was mentally responsible for his actions at the time he committed his crime. He discussed his impression with his client along the line that narcotics addiction did not constitute an insanity defense. He discussed entrapment with his client and gave his opinion that actions of federal officers in connection with narcotics cases could not be imputed to the State of Missouri in this robbery case. In discussing conditions of a guilty plea he succeeded in persuading the prosecuting attorney to reduce his recommendation with respect to sentence from 15 to 10, and ultimately to nine years. He felt under such circumstances that he gave his client good service in negotiating a plea and advice in recommending a guilty plea. He did not coerce his client but act-

ed in his interest. He felt that trial would result in a heavier penalty, perhaps a minimum of twenty years. During the 27.26 hearing the court ordered a psychiatric examination of appellant and the impressions were "that the young man was self-centered, that he put his own welfare ahead of the welfare of others or the greater society, and that on this sub-stratum—if it was really true that he was a heroin user in any appreciable amount * * * could be built a sociopathic personality with acting-out behavior; also, that during the course of an acute intoxication off of drugs or immediately in the withdrawal period, early in the withdrawal period he could be capable of acting without control; that is, he could be capable of doing illegal, antisocial things over which he would not be able to immediately curtail his actions."

The burden of proving his grounds for relief rested on appellant and review is limited to determining whether the findings, conclusions and judgment of the trial court are clearly erroneous. Criminal Rule 27.26, V.A.M.R.; Crosswhite v. State, Mo., 426 S.W.2d 67, 70 [1]. The stated evidence shows not only a failure of the appellant to sustain his burden of showing inadequacy of counsel, but shows also support for the finding and judgment of the court to the contrary; and, as a consequence, appellant's charge of inadequacy of counsel was properly denied. Crosswhite v. State, supra, 426 S.W.2d 1. c. 71–72 [4, 5]. Illegal evidence and an illegal confession in the hands of the state, if so, cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made, because such a plea is conclusive as to guilt and waives all nonjurisdictional defects in prior proceedings. The rule would apply also to defenses, if any, existing by way of insanity and entrapment because they, too, may be and are waived by a voluntary plea. Young v. State, Mo., 438 S.W.2d 280, 284 [4]; Turley v. State,

Mo., 439 S.W.2d 521, 524 [1–6]; Busby v. Holman, 5 Cir., 356 F.2d 75, 77–78 [1–4].

■ Was the guilty plea voluntarily and understandably entered? Appellant contends it was not because it was entered under mistaken belief he had no defense, was induced by a promise he would be sent to the state hospital, and appellant feared for his life. The trial court conducted an exhaustive examination which is reproduced in detail because it, together with the previous statement, demonstrates, contrary to appellant's contention, that the plea was voluntarily entered and supports the trial court's finding that "there wasn't any believable evidence that the movant's plea of guilty was involuntary. On the contrary, this Court took the plea of guilty from Mr. Dudley Brown and his wife and I gave them every opportunity to withdraw their plea of guilty, and when they asked for a pre-sentence investigation, I specifically told them in advance I thought they had little or no chance of getting probation and if they wanted to withdraw their plea of guilty they could do so; so, the Court finds the plea of guilty was completely voluntary."

The pertinent proceedings surrounding entry of appellant's guilty plea and sentencing follow:

"THE COURT: This is the case of State of Missouri versus Clementine Brown and Dudley Glen Brown, cause No. 276625. * * * That is the case that we had a conference yesterday or the day before yesterday * * * in which Mr. and Mrs. Brown made certain statements to me * * * about the Federal Bureau of Narcotics, is that right? MR. KIMBRELL: That's right. THE COURT: Now, Mr. Kimbrell, would you tell me just what has transpired? What arrangements, if any, have been made?

"MR. KIMBRELL: I have contacted the superintendent of the Missouri State Hospital at Fulton, Missouri with reference to his acceptance of the defendants as patients under the influence of narcotics—narcotic addiction under the statute. I also contacted Warden Swenson of Jefferson City and he agreed to process Mr. Brown and to give him to Fulton as a patient for whatever period of time it may be, and the director of the Missouri Commission—Mr. Wilkinson, of Missouri Department of Corrections, and he has also agreed to make arrangements on Mr. Brown and on Mrs. Brown so they be sent to Fulton for treatment as narcotic addicts. That will be for a period at the discretion of the superintendent for how long it is necessary for their cure of addiction, at which time I presume they will be transferred to whatever institution the Department of Corrections deems fit. THE COURT: Of course, Mr. Kimbrell, I have not talked to Mr. Wilkinson or Warden Swenson and I assume they are men of their word, but I assume have the power to do otherwise, once men get in the Missouri Department of Corrections. MR. KIMBRELL: Of course they do. THE COURT: And they both know this? DEFENDANTS BROWN: Yes, sir. THE COURT: You understand that, Mr. Brown? DEFT. (MR.) BROWN: Yes, sir, I do.

"THE COURT: And because of your peculiar problem we discussed Monday, they were going to make some arrangements to have you spend at least some of your time in Fulton so you both could be treated as narcotic addicts. Do you understand that? DEFT. (MR.) BROWN: Yes, sir. THE COURT: But you also understand that once you are sentenced by this court, that I lose jurisdiction of you, and I don't think there is any question about it Mr. Wilkinson and Warden Swenson do not have to carry out that agreement. Do you understand that? DEFT. (MR.) BROWN: Yes, sir. THE COURT: I think they are going to, because they are honorable men, but under the law they have no compulsion—as I understand the law—to do that. You go up there to the diagnostic center about thirty days and then you are assigned to one of the institutions under the Department of Corrections, and they may not

send you to Fulton. Do you understand that? DEFT. (MR.) BROWN: Yes, sir. THE COURT: Have you discussed that with Mr. Kimbrell? DEFT. (MR.) BROWN: Yes, sir. THE COURT: Knowing you don't have any ironclad promise, what do you want to do? DEFT. (MR.) BROWN: Plead guilty. * * *

"THE COURT: And you know all of the well-laid plans of Mr. Kimbrell could go astray and he can't guarantee that to you and I can't guarantee you that. Knowing that, do you still want to plead guilty? * * * DEFT. (MR. BROWN): Yes, sir. THE COURT: All right. In the robbery case I understand there is to be an announcement.

"MR. KIMBRELL: Yes, Your Honor. At this time defendants Dudley Glen Brown and Clementine Brown, also known as Clementine Bell wish to withdraw their former plea of not guilty and enter a plea of guilty to that charge. I have discussed with them their rights to trial by jury and they are fully aware of this, and have also discussed with them there are no promises of any kind and they are fully aware of this; that they have been promised nothing as to recommendations on this matter, and they know they can be sentenced to nine years. THE COURT: What is the State's recommendation—nine years as to each defendant? MR. KIMBRELL: We are recommending a presentence investigation on each defendant. THE COURT: For purposes of probation? MR. KIMBRELL: No—for purposes of Your Honor's considering whether or not to reduce the State's recommendation. THE COURT: Oh, I remember that now from Monday. Mr. Brown, how old are you? DEFT. (MR.) BROWN: Thirty-five. THE COURT: Where do you live? DEFT. (MR.) BROWN: 5730 Maple. THE COURT: That is in the city of St. Louis? DEFT. (MR.) BROWN: Yes. THE COURT: Do you have any children? DEFT. (MR.) BROWN: Yes, sir—three. THE COURT: How old are they? DEFT.

(MR.) BROWN: Fourteen, eight and two years. THE COURT: Where do they live? DEFT. (MR.) BROWN: They are staying with my mother-in-law on St. Louis Avenue. THE COURT: That is Mrs. Brown's mother? DEFT. (MR.) BROWN: Yes, sir. * * * THE COURT: How long have you been married? DEFT. (MRS.) BROWN: Sixteen years. * * * THE COURT: Where did you go to high school? * * * DEFT. (MR.) BROWN: Vashon. THE COURT: How much education do you have? DEFT. (MR.) BROWN: High school education. THE COURT: Do you both fully understand what you are doing here today? DEFENDANTS BROWN: Yes, sir. THE COURT: Do you both understand you have the right to trial by jury in this case? DEFENDANTS BROWN: Yes, sir.

"THE COURT: Now, Mr. Kimbrell wants to waive that right to trial by jury for you. You have that constitutional right to have that trial by jury. Nobody can waive it, unless you do it yourself. As to what possibilities may happen, has Mr. Kimbrell discussed that with you? DEFENDANTS BROWN: (No response). THE COURT: I guess you understand if you are tried by a jury you might win or might lose. Do you fully understand that? * * * DEFT. (MR.) BROWN: Yes, sir. THE COURT: I can remember in the past this case was on the docket for jury trial. Apparently there has been some change. DEFT. (MR.) BROWN: Well, I want to plead guilty. THE COURT: (To Mrs. Brown) And do you want to plead guilty? DEFT. (MRS.) BROWN: Well, I know I am guilty and I just don't want a jury trial. THE COURT: Why don't you want a jury trial, Mr. Brown? DEFT. (MR.) BROWN: For the same reason. THE COURT: Well, you know a jury sometimes acquits people. You know that. DEFT. (MR.) BROWN: Yes, sir. THE COURT: But you don't want to take that chance? * * * And you are both waiving that right? DEFENDANTS

BROWN: Yes, sir. THE COURT: You are both saying yes? DEFENDANTS BROWN: Yes, sir. THE COURT: You haven't been made any promises? DEFENDANTS BROWN: No, sir. THE COURT: You understand this carries a minimum sentence of five years and maximum sentence of the death penalty. You understand that? DEFENDANTS BROWN: Yes, sir. THE COURT: Do you understand the State is going to recommend that I sentence you both to nine years in the Missouri Department of Corrections, which is a long time. Do you understand that? DEFENDANTS BROWN: Yes, sir. THE COURT: It is my understanding that Mr. Kimbrell wants me to order a pre-sentence investigation to determine whether or not that isn't too long of a sentence. Maybe I ought to sentence you to a little less sentence than nine years. You understand that? DEFENDANTS BROWN: Yes, sir.

"THE COURT: I am willing to order a pre-sentence, but I also want you to know this is a two-edged sword. If I don't think nine is long enough, I can up this sentence and give you life imprisonment or the death penalty. Do you understand that? DEFENDANTS BROWN: Yes, sir. THE COURT: And I might cut it down from nine or leave it at nine. Do you both understand that? DEFENDANTS BROWN: Yes, sir. THE COURT: Knowing that you don't know what this court is going to do, do you still want to enter a plea of guilty? DEFENDANT (MR.) BROWN: Yes, sir. * * * THE COURT: Have you been promised anything to plead guilty? DEFENDANTS BROWN: No, sir. THE COURT: Have you been promised probation or parole? DEFENDANTS BROWN: No, sir. THE COURT: And even though I am going to order a pre-sentence investigation, I will tell you in advance—because I think there were people hurt in this robbery and there may or may not have been shots fired and loaded guns fired. If I find this, I won't give either one of you probation. Do you understand that? DEFENDANTS BROWN: Yes, sir. THE COURT: Knowing that, do you still want to plead guilty or withdraw your plea of guilty, if the Court tells you he won't give you probation? Do you want to withdraw your plea of guilty or still want to plead guilty? DEFT. (MR.) BROWN: We still want to plead guilty. * * *

"THE COURT: I notice here from the information that you were both charged under Missouri's Habitual Criminal Act. You both served time in 1960 out in California, is that right? DEFENDANTS BROWN: Yes, sir. THE COURT: Were you involved in that grand theft together? DEFENDANTS BROWN: Yes, sir. THE COURT: What was that grand theft? DEFT. (MR.) BROWN: Shoplifting. * * * THE COURT: You have been on narcotics, haven't you? DEFT. (MR.) BROWN: Yes, sir. * * * THE COURT: Well, you are not all doped up today, are you? You don't look it to me. DEFT. (MRS.) BROWN: No, sir. THE COURT: Do you know what you are doing here today? * * * DEFT. (MR.) BROWN: Entering a plea of guilty to the charge of first degree robbery. THE COURT: You fully understand you don't have to plead guilty and nobody can make you plead guilty? DEFT. (MR.) BROWN: That's right. THE COURT: How long have you been in the County Jail? DEFT. (MR.) BROWN: Since March 23rd. THE COURT: Are you guilty of this robbery? DEFT. (MR.) BROWN: Yes, sir. THE COURT: Who was in on it—just the two of you? DEFT. (MR.) BROWN: Yes, sir. * * * THE COURT: How many guns were involved, Mr. Brown? DEFT. (MR.) BROWN: Two guns. THE COURT: Did you have a gun? DEFT. (MR.) BROWN: Yes, sir. THE COURT: What kind of gun? DEFT. (MR.) BROWN: .38 revolver— .38 caliber revolver. THE COURT: How many shells did it have? DEFT. (MR.) BROWN: This I don't know, Your Honor. I found out later that it was four. THE COURT: Was the gun loaded? Did it

have one in the chamber? DEFT. (MR.) BROWN: It was four—full—it was a loaded revolver, full of bullets. THE COURT: (To Mrs. Brown): Did you have a gun? DEFT. (MRS.) BROWN: Yes, sir. THE COURT: What kind of gun was yours? DEFT. (MRS.) BROWN: I don't know. THE COURT: Where did you get the gun—from your husband? DEFT. (MRS.) BROWN: No, sir, from the officer—Mr. Patch. He had left it in the house. THE COURT: That was for protection, wasn't it? DEFT. (MRS.) BROWN: Yes, sir. THE COURT: When you were informers for the narcotics agents? DEFT. (MRS.) BROWN: Yes, sir. THE COURT: Was the gun loaded? DEFT. (MRS.) BROWN: I don't know how many bullets were in it, but it was loaded.

"THE COURT: You two people are charged with robbery from the Schimmel Fur Company. Did you rob the Schimmel Fur Company, Mrs. Brown? DEFT. (MRS.) BROWN: Yes, sir. * * * THE COURT: Well, what happened, Mr. Brown? Just tell me what you did when you got there. DEFT. (MR.) BROWN: Well, we went in with the intention of shoplifting, and after we couldn't, we pulled out the guns and robbed them. THE COURT: All right. Did you both pull guns? DEFT. (MRS.) BROWN: Yes, sir. THE COURT: Did you pull a gun, Mr. Brown? DEFT. (MR.) BROWN: Yes, sir. THE COURT: How many people were in there? DEFT. (MR.) BROWN: Two people. * * * THE COURT: After you pulled out your guns, then tell me what happened. DEFT. (MRS.) BROWN: Told them to lay down; that we didn't want to hurt them, but just wanted furs; and the lady struck me and I ran to the door, and I was so nervous and excited. That is when I hit her. I hit before I knew it. THE COURT: What did you hit her with? DEFT. (MRS.) BROWN: Butt of the pistol. THE COURT: Where did you hit her? DEFT. (MRS.) BROWN: I think in the side of her head. * * * THE COURT: What did she do after you hit her on the head? DEFT. (MRS.) BROWN: She lay down. THE COURT: What did you do? DEFT. (MRS.) BROWN: Picked up the furs and left the place. * * * THE COURT: You are charged with taking seven fur coats, of a value of $7,000.00, is that about right? DEFT. (MRS.) BROWN: That is about right. THE COURT: Then what happened? DEFT. (MRS.) BROWN: We got in our car and drove off.

"THE COURT: Well, I thought there were some shots fired in this matter. DEFT. (MRS.) BROWN: Yes, sir. THE COURT: Who fired them? DEFT. (MRS.) BROWN: I did—up in the air. THE COURT: How? DEFT. (MRS.) BROWN: The man came out in the door and was trying to see the license plate, and I shot to scare him so he wouldn't see our car. THE COURT: How many shots did you fire, do you think? DEFT. (MRS.) BROWN: Up in the air—three. THE COURT: Did you fire any, Mr. Brown? DEFT. (MR.) BROWN: No, sir. THE COURT: Did you hit anybody? DEFT. (MR.) BROWN: No, sir.

"THE COURT: The Court will accept you plea of guilty to the charge of Robbery First by means of a Dangerous and Deadly Weapon, and under the law I must grant you both allocution and ask you whether or not you have any legal reason why I shouldn't sentence you. Mr. Brown, do you know of any legal reason why I shouldn't sentence you? DEFT. (MR.) BROWN: No, sir. THE COURT: Do you have anything to say? DEFT. (MR.) BROWN: No, sir. * * * THE COURT: The Court will accept both of your pleas of guilty and order the State Board of Probation make a presentence investigation and set the matter down for sentencing Friday, July 7th. * * *

"On July 7, 1967 this cause came on for hearing in Division No. 1 of the St. Louis County Circuit Court before the Hon.

George E. Schaaf, presiding, Mr. Donald Gerard appearing for the State of Missouri, and Mr. William Shaw appearing for the defendants, Clementine Brown and Dudley Glen Brown, who were present in court with their attorney, the charge in this case being Robbery, First Degree by means of a Dangerous and Deadly Weapon. * * *

"THE COURT: * * * We are here for sentencing, the defendants having previously on June 21st, 1967 entered a plea of guilty to the offense charged—Robbery First Degree by means of a Dangerous and Deadly Weapon. Under the law—you are Dudley Glen Brown, is that correct? DEFENDANT (MR.) BROWN: Yes, sir.

"THE COURT: I must grant you allocution and ask you whether or not you know of any legal reason why I should not sentence you. Do you know now of any legal reason why I should not sentence you? DEFENDANT (MR.) BROWN: No, sir. THE COURT: Do you have anything to say? DEFT. (MR. BROWN): No, sir. * * *

"THE COURT: What is the State's recommendation? MR. GERARD: Nine years on each defendant. THE COURT: Any comment? MR. SHAW: Well, the purpose of the pre-sentence, Your Honor, was for your Honor to examine the premises involved here. Mr. Kimbrell in my office and I have gotten to know Tina and Dudley pretty well, and I think eventually civilization is going to recognize that drug addiction, which has caused their trouble, is an illness, and in addition I think we have a situation here where these people have been of great service in a certain field of law enforcement and in doing that their addiction was furthered by law enforcement in that field. I think the clemency of the Court could show—and at no time has either defendant tried to in any way lessen the serious nature of these offenses; they were fully cognizant of the gravity of that; and any clemency the Court could show of any nature would certainly be appreciated.

"THE COURT: Of course, the trouble is—and I didn't know it either until I received the pre-sentence investigation—Mr. and Mrs. Brown are about as criminally sophisticated as any parties that have ever appeared before me—very highly criminally oriented. California sent them away for six to ten years and it didn't do a bit of good. I can go through all of their other offenses, but we will be here all day.

"MR. SHAW: I know that, but I think underlying this is their addiction problem. There is no question about it, and both had treatment in the narcotic hospital. THE COURT: Is that right, Mr. Brown? DEFT. (MR.) BROWN: Yes, I was there two years. THE COURT: In the U. S. Bureau of Public Health Narcotic Hospital? DEFT. (MR.) BROWN: That's right. * * * THE COURT: Well, both of these people have been on probation before, and both—you have served time in the Federal prison and California prison, is that right, Mr. Brown? DEFENDANT (MR.) BROWN: Yes, sir. * * *

"THE COURT: * * * this robbery of Schimmel Fur Company was a vicious robbery in which a lady was hit over the head with a gun and two shots were fired. The only thing I have to say is I am just concerned that nine years is enough, but I will accept the recommendation of the Prosecuting Attorney of St. Louis County. Ten years in California didn't do them a bit of good, and I doubt this will do them any good, either, but I hope it will, because if not, some other judge will just keep putting you away, and it seems somewhere along the line you will get awfully tired of it. I will accept the recommendation of the Prosecuting Attorney of St. Louis County and sentence you to nine years in the custody of the Missouri Department of Corrections in Dudley Glen Brown's case."

Without determining application of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16,

it can be said that this record complies with contemporaneous state and federal standards and the standards of those cases in disclosing that Dudley G. Brown voluntarily and understandingly entered his plea of guilty.

It may be, as contended by appellant, that Federal Narcotics Agent Patch abused him in his role of narcotics violation informer, but those circumstances, if so, do not relieve appellant of his guilt of robbery on his voluntary guilty plea. Accordingly, it cannot reasonably be said on this appeal that the judgment of the trial court was clearly erroneous. State v. Mountjoy, Mo., 420 S.W.2d 316, 323–324 [4–9]; Mountjoy v. Swenson, No. 1296, D.C.Mo., November 18, 1969; Crosswhite v. State, supra.

Judgment affirmed.

HOUSER and WELBORN, CC., concurs.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and HENSON, Special Judge, concur.

STORCKMAN, J., not sitting.