**John R. ABERCROMBIE, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 54952, 54953.**

Supreme Court of Missouri, Division No. 2.

Sept. 14, 1970.

. Fred Foster, Jr., Richard E. Feutz, Camdenton, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

On May 3, 1965, John R. Abercrombie, represented by distinguished counsel, Honorable Will F. Berry, Jr., entered pleas of guilty to two charges of murder in the first degree and was sentenced in each case to a term of life imprisonment. (He had two prior felony convictions in California, one after a jury trial and the other upon a plea of guilty.) The pleas were entered one year and nineteen days after Abercrombie's arrest on the day of the murders and after, in the language of his lawyer when the pleas were entered, "a full pre-

liminary hearing" in both cases and after two psychiatric examinations, one of 28 days in the state hospital at Fulton where he was "found capable" of assisting his attorney and, incidentally, of standing trial.

The undenied facts of the two killings are that on the evening of May 12, 1964, Abercrombie followed the automobile of Cecil and Ruth Bybee into the Eldorado Motel in Camden County. While the Bybees were unpacking Abercrombie approached, engaged them in conversation, produced a gun and for no known reason shot and killed both Mr. and Mrs. Bybee and drove away. Shortly he and his fiancee, Katherine Nance, were arrested and the murder weapon, a .38 caliber revolver, was found on the floor of his automobile.

After abortive 27.26, V.A.M.R., proceedings, Abercrombie on September 27, 1968, filed long, rambling amended 27.26 motions in each case and two lawyers, Fred Foster, Jr., and Richard E. Feutz, were appointed to represent him. In addition, on the day of hearing, Ben Brown, an inmate of the penitentiary, appeared at counsel table "to help John here and help in these proceedings." The two motions were consolidated, Brown was permitted to remain in the courtroom and there was a full and unlimited hearing of Abercrombie's motion. The court made a detailed finding of fact, all issues were found against Abercrombie and he has appealed from the orders denying his motions to vacate the judgments and sentences.

The appellant's first two claims of relief relate to the informations—that they failed to charge murder in the first degree and second, that the court's statement "during the pleas" that defendant "did kill and murder" were not in the informations and were misleading and for these reasons he urges that he is entitled to be discharged. State v. Small, 313 Mo. 66, 280 S.W. 1033. Specifically, appellant's counsel urges that the informations omit an essential element of murder in the first degree—"as to the time and place of death of the deceased" and in

their failure to state that "then and there * * * did kill and murder." And it is said that the court's statement, when accepting the pleas, that the charges "you did kill and murder" misled the appellant and fearful of the death penalty he entered pleas of guilty. The state, on the other hand, contends that the informations charge murder in the first degree and in any event are not fatally defective for any of the reasons urged. In its brief the state says that it is "unaware of any cases considering the precise issue as to whether an information must allege the place of death."

At common law, in first degree murder, it was necessary to allege the time and place of the act causing death "and the place of death." 40 Am.Jur.2d (Homicide) §§ 232, 236; 2 Warren Homicide, § 177, pp. 75–76. The Missouri cases are collected in the annotation: "Necessity and materiality of statement of place of death in indictment or information charging homicide" 59 A.L.R.2d 901, 905. These cases arose, however, on motions to quash, pleas in abatement or other appropriate methods of attack and in some instances on an objection of variance. 40 Am.Jur.2d § 237, p. 509. The informations here employ the magic words of the statute, the language essential to a charge of murder in the first degree, that Abercrombie "did then and there, with specific criminal intent, *wilfully*, intentionally, unlawfully, maliciously, *deliberately*, feloniously, on purpose, and of his malice aforethought, in and upon one Ruth Bybee, then and there being, feloniously, *wilfully*, *deliberately*, *premeditatedly* and of his malice aforethought make an assault with a dangerous and deadly weapon, to wit, a loaded .38 caliber revolver, and did inflict upon her, the said Ruth Bybee, a mortal gunshot wound from which she died." RSMo 1959, § 559.010, V.A.M.S. The statute employs the underscored language in defining murder in the first degree, it does not in terms require the allegation of the place of death even though in the nature of things the fact of the death

of the victim is the very essence of the crime—here that "said Ruth Bybee * * * died." In State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949, an information was substituted for an indictment "quashed because it did not specifically allege the date on which Miss Davidson died." Upon a claim that there could be no substitution because the indictment was fatally defective the court held "that the indictment was not a nullity" and therefore a substitute information was permissible and proper. Supporting the informations here, since they allege the death, impliedly "immediately," in Camden County, it may be said that " 'then' has relation to that time, and 'there' to the place." State v. Steeley, 65 Mo. 218, 221. After reviewing the problem in depth the court in State v. Borders, Mo., 199 S.W. 180, and again in State v. Majors, 329 Mo. 148, 44 S.W.2d 163, made this observation: "Of what avail would it have been to defendant either in the preparation or in the making of his defense if the place of the death of his victim had been stated, or, if stated, it had been shown to be incorrect? Constituting no defense, it was not a substantive fact, and its averment was unnecessary." In this posture, in the absence of a bill of particulars or other timely objection (41 Am.Jur.2d, Indictments & Informations, §§ 299–301), the appellant's pleas of guilty to both indictments "waived all defenses other than that the information charged no offense." State v. Conley, Mo., 123 S.W.2d 103; State v. Johnson, 93 Mo. 317, 6 S.W. 77; Larson v. State, Mo., 437 S.W.2d 67, 69; State v. Brookshire, Mo., 368 S.W.2d 373.

■ Other points briefed and argued by appellant's counsel are that (in 1964) in violation of the precepts of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, he was denied the right to counsel "prior to giving written or incriminating statements or confessions," that his constitutional rights were violated by reason of an illegal search and seizure "of a certain pistol mentioned in evidence" and finally that he "entered pleas of guilty due to the totality of circumstances which lead to coercion, misrepresentation, and misinformation so as to induce movant to enter pleas of guilty."

Abercrombie must have made incriminating statements or admissions to police or other officials, he may have made a written confession, but they are not in this record and it does not appear that any such statements or admissions were ever employed by the state or anyone else in connection with his pleas of guilty. It may be said that when Abercrombie was first arrested and the well-known Mr. Harry Kay appeared in Camdenton at the request of Mr. and Mrs. Elmer Abercrombie of Tulsa to advise their son that the sheriff, the highway patrol and the prosecuting attorney were indeed in an Escobedo situation—but that was on May 15, 1964, and it does not appear what if any information was obtained at that time, it certainly was not used when the pleas of guilty were entered. And as stated at the outset Abercrombie's father and mother employed the experienced Mr. Will F. Berry, Jr., to represent their son, and he did represent him from before the preliminaries to the pleas of guilty. Abercrombie, except for the days in Fulton for psychiatric examination, was held in jail in Greene County for over twelve months before his cases were disposed of. He said that Mr. Berry thought "that the evidence in this case was slim, and the merits of the case were weak" until his parents withdrew their substantial financial support and then Mr. Berry's attitude changed "saying that the prosecution had plentiful evidence and that the merits on the case were strong and that we didn't have a good case." It may be interpolated that the two-sentence recitation of the facts of the killings refutes completely the possibility of a defense to the two crimes. And, the transcript of the pleas of guilty on May 31, 1965, before Honorable Claude E. Curtis are in this record and they reveal a careful acceptance of the pleas in both cases.

In any event, in testifying in this proceeding, Abercrombie testified that he was whipped, beaten, "placed in a hole" and a dog unleashed on him while in the Greene County jail. He does not even claim, however, that this mistreatment had anything to do with any incriminating statement he may have given or with his pleas of guilty. On direct examination there were these questions and answers: "Q. Were any statements made to you by anyone while you were under, or held in confinement regarding Miss Nance, or her confinement in the jail? A. Yes, sir. Q. What were these statements? A. I was told that though it was obvious Miss Nance was not involved, that the prosecution or investigating officers held no evidence whatsoever to implicate this person as being involved with the crime that I was charged with, but that she would be held until I made a statement. Q. And did you make that statement? A. Yes, sir. Q. Was that statement in the nature of a confession? A. Yes, sir. Q. Was she then released? A. Yes, sir." After his parents withdrew their financial support, he said, "I was not aware at the time that the law called for a person to be represented by counsel should he have to dismiss his present counsel, no. Q. So then you did proceed to enter your plea of guilty? A. I felt that I could not do otherwise."

The incontrovertible fact, as Abercrombie admits, is that Miss Nance was released without charge on May 15, 1964, and as stated the pleas of guilty were entered a year later on May 31, 1965. His parents were present on that occasion and they had conferred repeatedly with Mr. Berry and Mr. Berry represented him and of course recommended that he enter the pleas. And in this proceeding he testified that he entered pleas of guilty to two charges of murder in the first degree, "That is as the Judge read them to me." He said that "the offense was supposedly to have occurred some forty or thirty minutes prior to my arrest" and he understood that first degree murder was punishable by "Life or death."

The court read the informations to the appellant, and advised that he was entitled to a jury trial. There was this question and answer with regard to the statements: "Q. Was or was not a part of this inducement a fear that the statement that you had signed in May of 1964 that it would be used against you and would be detrimental? * * *

A. I was feared of the statement being used against me in court, yes, sir." But in the next breath: "Q. Was it your statement that you made, the statement made in order to obtain the release of your fiancee, Miss Nance—Miss Katherine Nance? A. Yes, sir." But again the pleas of guilty were entered more than a year after the giving of the statement and more than a year after the release of Miss Nance.

In this background Abercrombie's killing of Mr. and Mrs. Bybee and his subsequent pleas of guilty are governed by these excerpts from three recent opinions of the Supreme Court of the United States.

"A conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged.

\*    \*    \*    \*    \*    \*

We hold, therefore, that a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus." McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763.

And from Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785:

"—but we need not evaluate the voluntariness of petitioner's confession since even if the confession should have been found involuntary, we cannot believe that the alleged conduct of the police during the interrogation period was of such a nature or had such enduring effect as to make involuntary a plea of guilty entered over a month later. * * Parker had the advice of retained coun-

sel and of his family for the month before he pleaded. The connection, if any, between Parker's confession and his plea of guilty had 'become so attenuated as to dissipate the taint.'"

There is as indicated no foundation for a claim of involuntary confession but even so:

"The trial judge, after an evidentiary hearing during which the tape recording was played, could not agree with this contention, and our reading of the record does not lead us to a contrary conclusion. * * * These cases must be decided by viewing the 'totality of the circumstances' * * * and on the facts of this case we can find no error in the admission of petitioner's confession." Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684.

There is no merit in appellant's claims and accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.