STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
EMANUEL EARLE, DEFENDANT-RESPONDENT.

Argued November 9, 1971—Decided June 19, 1972.

*Mr. David S. Baime,* Assistant Prosecutor, argued the cause for appellant (*Mr. John De Cicco,* on the brief; *Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

*Ms. Sonia Napolitano* argued the cause for respondent (*Messrs. Teltser and Greenberg,* attorneys).

PER CURIAM. Defendant was convicted of atrocious assault and battery. The Appellate Division reversed, 112 *N. J. Super.* 523 (1970), and we granted the State's petition for certification. 57 *N. J.* 602 (1971). We delayed decision in this case for the reason that the decisive issue was before the United States Supreme Court.

Defendant, in custody on another charge, was identified by the victim of the crime here involved. The Appellate Division held that *United States v. Wade,* 388 *U. S.* 218, 87 S. Ct. 1926, 18 *L. Ed.* 2d 1149 (1967), and *Gilbert v. Cali-*

*fornia,* 388 *U. S.* 263, 87 S. Ct. 1951, 18 *L. Ed.* 2d 1178 (1967), required that counsel be furnished defendant in connection with the confrontation, and none having been furnished here, the conviction had to be reversed.

*Wade* and *Gilbert* involved post-indictment lineups. They held the Sixth Amendment right to counsel obtained in those circumstances. There followed considerable controversy as to whether the *Wade-Gilbert* exclusionary rule applied only to a post-indictment identification. See *State v. Mustacchio,* 57 *N. J.* 265 (1970). The case to which we referred in the opening paragraph above is *Kirby v. Illinois,* 405 *U. S.* ——, 92 S. Ct. 1877, 32 *L. Ed.* 2d 411 (1972). There the majority of the Supreme Court held the *Wade-Gilbert* rule did not apply to an identification which took place before the commencement of the prosecution of the defendant. Thus the Appellate Division erred in its reading of *Wade-Gilbert* or in its forecast of what those cases portended.

■ We add that although counsel need not be present in these circumstances, enforcement authorities should nonetheless make a complete record of an identification procedure if it is feasible to do so, to the end that the event may be reconstructed in the testimony. The identity of persons participating in a lineup should be recorded, and a picture should be taken if it can be. If the identification is made or attempted on the basis of photographs, a record should be made of the photographs exhibited. We do not say a failure hereafter to follow such procedures will itself invalidate an identification, but such an omission, if not explained, should be weighed in deciding upon the probative value of the identification, out-of-court and in-court.

■ The remaining question is whether the confrontation between defendant and the victim was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny due process under *Stovall v. Denno,* 388 *U. S.* 293, 302, 87 S. Ct. 1967, 18 *L. Ed.* 2d 1199, 1206 (1967), or as later phrased in *Simmons v. United States,* 390 *U. S.* 377, 384, 88 S. Ct. 967, 19 *L. Ed.* 2d 1247, 1253 (1968), a

case involving photographic identification, whether the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The victim in the present case was a railroad patrolman named Lancellotti. He surprised four men engaged in stealing from a refrigerated freight car in a railroad yard at one o'clock in the morning. Lancellotti said he had a good, illuminated view of the defendant. Lancellotti was shown about 200 "mug" shots. Every trespasser on railroad property was checked against the description Lancellotti gave. Lancellotti confronted at least 15 men arrested in the area, and viewed over 100 vagrants who frequented it. He identified none of the men thus pictured in mug shots or viewed in person. Defendant was not among them.

About seven months after the crime here involved, a railroad security guard arrested defendant, who was trespassing on the same property. Defendant answered the description Lancellotti had given, and he had attempted to strike the guard. Lancellotti went to the precinct where three men of the same race were in a cell. One was the defendant. Lancellotti identified him as his attacker.

We see no denial of due process in these facts. Lancellotti knew that a man in custody might or might not have been the offender. It was not intimated to him that the suspect was implicated in this crime by other proof. The Appellate Division pointed out that the three men were different in appearance and that Lancellotti had received a description of the suspect before he viewed the men. But Lancellotti thereby knew only that the suspect resembled in some particulars the man he himself had described after the attack. Surely it cannot be said that due process is offended whenever a description of a suspect is given to the victim in advance of the identification, and indeed here notwithstanding that the description simply accords with the description the victim had furnished. We cannot assume the victim will be less than conscientious on that ac-

count, and we cannot say there abides in those circumstances a likelihood that the victim will be unwittingly led into a misidentification. Lancellotti said he made the identification on the basis of his own recollection. That testimony was credible. Lancellotti was hardly suggestible; he had not identified any of several hundred others who were sufficiently suspect to be viewed by him. Due process was not offended by the admission of his testimony. *State v. Mustacchio, supra*, 57 *N. J.* 265.

There is no merit in the other points advanced by defendant.

The judgment of the Appellate Division is reversed and the judgment of conviction is affirmed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.