**Ronnie Lee ROBINSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 56987.**

Supreme Court of Missouri,
Division No. 2.

July 17, 1972.

Robert S. Davis, St. Louis, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., for respondent.

HOUSER, Commissioner.

This is an appeal from a judgment denying Ronnie Lee Robinson's Criminal Rule 27.26, V.A.M.S., motion to vacate sentences of 7 years' imprisonment for attempted robbery in the first degree by means of a dangerous and deadly weapon and 5 years' imprisonment for carrying a concealed weapon, entered upon pleas of guilty.

I.

The first question is whether the sentencing court failed to develop from accused that there was a factual basis for the pleas of guilty. Appellant contends that due process requires that the court elicit from an accused facts showing that he had actual knowledge of the crime to which he pleads guilty; that the record must show that accused gave a full description of the facts upon which the charge is made.

In determining this question we look not only to the 13-page transcript of the proceedings at the time the pleas of guilty were entered but also to the transcript of the 27.26 hearing. State v. Mountjoy, Mo.Sup., 420 S.W.2d 316; State v. Sayre, Mo.Sup., 420 S.W.2d 303; State v. Davis, Mo.Sup., 438 S.W.2d 232; Drew v. State, Mo.Sup., 436 S.W.2d 727; State v. Grimm, Mo.Sup., 461 S.W.2d 746 [2]; Brodkowicz v. State, Mo.Sup., 474 S.W.2d 822, 828–829 [6]; Schuler v. State, Mo. Sup., 476 S.W.2d 596 [3]; Flood v. State, Mo.Sup., 476 S.W.2d 529, 533 [2]. We are convinced from a reading of the entire record that there was a factual basis for the pleas of guilty; that accused had actual knowledge of and fully understood the facts upon which these charges were made; that accused in open court, accompanied by his counsel, withdrew previously entered pleas of not guilty and entered pleas of guilty after thoroughly discussing all phases of both cases with family and counsel on several occasions; that accused entered these pleas voluntarily, knowingly and with full appreciation of the implications and possibilities of going to trial or entering pleas of guilty; that the sentencing judge had a sufficient basis upon which to satisfy himself that there was a factual basis for the pleas, and that he was so satisfied.

It is true that the accused, when asked at the beginning of the hearing at which he entered guilty pleas whether the holdup occurred in a house or on the street or where, answered, "Judge, I couldn't say," and that accused at first declared his innocence of the charge of carrying a concealed weapon and maintained that he had nothing to do with the attempted robbery. It is clear from the record, however, that in spite of these initial protestations of innocence it was finally his firm will and desire to enter pleas of guilty (whether with conscious knowledge of guilt he was confessing to the truth or whether he was not guilty but was consenting to the imposition

of prison sentences as a voluntary and intelligent choice among the alternatives open to him, according to his conception of his best interests, in the situation of the accused in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162).

■ There is no question that accused was informed of the charges. The indictments were read to him in open court. In addition, the assistant circuit attorney in open court in the presence of accused, gave the following brief background of the facts relating to the attempted robbery: "This happened in the 700 block of North Euclid, in the rear of the building up there, Your Honor. The victim was approached and would not hand over his money; he threw some books at the defendant, and several shots were fired, and the defendant was then arrested several—approximately three blocks away by two officers." Thereupon accused acknowledged that the indictment on the charge of attempted robbery was substantially correct; that he did what was "set out and charged in there," and admitted "doing that." In answers to questions asked by the court accused affirmed that he desired to plead guilty as charged; that he had no doubts about that "at this time"; that he was "sure of that"; that he was "positive"; that he had discussed the matter with his attorney, who had advised and "explained the whole situation" to him, and that he still desired to plead guilty. He acknowledged that he realized that he had "a right to a full and complete trial by jury" but was waiving that right; that he was pleading guilty of his own free will. Counsel for accused advised the court that he had read and explained the indictments to him and discussed the matter thoroughly with him; that accused wanted to withdraw his previous pleas of not guilty and plead guilty as charged.

■ Although accused's responses to the questions propounded to him by the court (reported in the 13-page transcript) were simply "yes" and "no" answers, and notwithstanding he did not in his own words frame narrative answers demonstrating per se that there was a factual basis for the pleas, the trial judge's actions may not be declared clearly erroneous on this basis. That an accused understands charges with which he is confronted may be deduced from yes and no answers as well as from descriptive factual recitals by accused. Whether accused was telling the truth when he proclaimed his innocence at the beginning of the hearing or later when he confessed his guilt, in either event the record is clear that there was a factual basis for the pleas of guilty, and that the pleas were entered by accused voluntarily, knowingly and understandingly, and to the satisfaction of the judge accepting the pleas.

Buttressing these conclusions are the following facts, gleaned from the 27.26 transcript: Robinson conceded that his counsel conferred with him several times before the pleas of guilty were entered; that he was aware of what was going on—aware of what he was doing when he pleaded guilty—aware that if he was found guilty by a jury he "might have a harsher sentence"—that if found guilty by a jury it would "go harder" on him because he had a prior conviction. Appellant testified that he pleaded guilty voluntarily, "under advisement" by his counsel, who advised him to plead guilty; that he accepted the advice and had no complaint about the services rendered by his attorney. At the 27.26 hearing the attorney testified that he and Robinson discussed the facts several times; that Robinson told him a story so improbable that he could not believe it (to the effect that Robinson was walking towards Taylor and Easton Avenues, generally east of the place where the shooting took place; that a man he saw running threw a package into a hedge along the sidewalk; that the man crossed the street and disappeared; that accused retrieved the package because he "did not want the children to get it and be hurt by a gun that might be in it," and that the police came by and found him carrying this gun). The attorney talked to the victim of the attempted

robbery, who told him there was no doubt in his mind that he had identified the correct person (this appellant). Robinson did not give counsel the names of any persons who might have supported his story. In this background counsel, who saw no possibility of successfully defending against the charges, negotiated with the circuit attorney's office, which reduced its original demand of 12 years on a plea to 7 years. Counsel testified that he did not advise accused to plead guilty but simply advised him as to the consequences of a plea of guilty; that the decision to plead guilty was made by accused.

■ In its ruling on the 27.26 motion the trial court made this finding: "The Court was able to determine a factual basis for the plea. The same having been described to the Court in the presence of the defendant, and the defendant stating that the recounting of the charge is correct. Therefore, movant cannot complain the Court was unaware of the factual basis for the plea." On the whole record the ruling is not clearly erroneous.

## II.

■ The sentences should not be vacated under Criminal Rule 25.04 on the ground that the pleas were equivocal. As indicated, *before* the indictments were read accused expressed ignorance of the place where the attempted robbery occurred, denied participation therein and denied the concealed weapon charge. *After* the reading of the informations accused, having been informed as to the charges and some of the factual background, expressed no such unfamiliarity and, instead of denying, freely and unequivocally admitted his participation and guilt. Under the record in this case the following finding of the trial judge is not clearly erroneous:

"* * * while obviously during the plea proceedings movant at first equivocated and hedged in his admission of guilt, he later admitted without hesitation that the facts of the occurrences were as stated; and, as he testified on the evidentiary hearing on his motion, he was fully aware of what he was doing.

"It should be kept in mind that this is not unusual for a defendant to first equivocate and show reluctance when the time comes for him to admit the crimes which he is charged, which is overcome when defendant makes positive and definite answers. He did finally make full and unequivocal admissions (Plea Tr. pp. 6, 7, 8) and thus cannot now be heard to complain of his preceding equivocal conduct."

## III.

■ There was no denial of due process of law based on the alleged unfairness of the one-to-one confrontation between accused and an identifying witness, conducted at the hospital shortly after the commission of the crime. The identification thus made was not used against accused in procuring his conviction. Whether fair or unfair, the evidence of the identification was never used in court. Accused pleaded guilty. As in the case of confessions allegedly illegally obtained[1] so in the case of identifications allegedly illegally obtained, e. g., where not used in evidence in procuring the conviction they afford the convicted person no right to relief in postconviction proceedings upon the bare allegation that the plea of guilty was entered because of the allegedly illegally obtained identification.

---

1. "The fact that there was an allegedly inadmissible confession in existence which might have been used in evidence against appellant is no sufficient reason to vacate the judgment and sentence entered pursuant to a plea of guilty, where the plea was otherwise voluntarily and understandably made." Maxwell v. State, Mo.Sup., 459 S.W.2d 388, 392 [2]. And see Abercrombie v. State, Mo.Sup., 457 S.W. 2d 758 [2]; State v. Brown, Mo.Sup., 449 S.W.2d 664; Parker v. North Carolina, 397 U.S. 790, 796, 90 S.Ct. 1458, 25 L.Ed.2d 785, 791.

## IV.

There was no denial of due process of law based upon the conduct of several police station lineups, without the authorities informing the suspect that their purpose was possible identification, and without informing him that he was entitled to have counsel present, and without obtaining a waiver of his right to counsel. These lineups occurred shortly after the occurrence of the crime, and long before the information was filed. The per se exclusionary rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, do not apply to preindictment (or preinformation) confrontations. Kirby v. Illinois (decided June 7, 1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; State v. Chavez, Mo.Sup. (No. 56,971, decided July 17, 1972) 483 S.W. 2d 68.

## V.

Accused was not subjected to double jeopardy, or double punishment for the same offense, on the ground that he was charged with attempted robbery with a dangerous and deadly weapon and carrying a concealed (the same) weapon. The two crimes were separate and distinct. Although occurring on the same date, they took place at different places and times in the City of St. Louis. The attempted robbery occurred in the 700 block of North Euclid. The concealed weapon charge arose out of an arrest at the intersection of Taylor and Easton Avenues. Movant did not show that the concealed weapon taken from him at Taylor and Easton Avenues was the same weapon used in the attempted robbery on North Euclid earlier that evening. The two charges arose out of separate transactions. In this respect this case differs from the situation in State v. Richardson, Mo.Sup. en Banc, 460 S.W.2d 537, in which this Court held that the rule against double jeopardy was violated where the necessary act toward the commission of an attempted robbery was the identical assault upon which a charge

of assault with intent to maim was based, where after conviction of attempted robbery the defendant was prosecuted on the assault charged. There is authority for the proposition that even where a robbery charge and a concealed weapon charge arise out of the same transaction a prosecution for the former will not bar a prosecution for the latter, 22 C.J.S. Criminal Law § 295(6); People v. Cooper, 256 Cal. App.2d 500, 64 Cal.Rptr. 282, cert. den. 391 U.S. 953, 88 S.Ct. 1858, 20 L.Ed.2d 867, but we do not rule that question, since it is not presented on this record. The following finding by the trial court is not clearly erroneous: "Everything in the record shows that these were two separate incidents. Movant failed to controvert the record as it stands or otherwise show affirmatively that he was subjected to double jeopardy."

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and FINCH, C. J., concur.