## Commonwealth *v.* McKinney, Appellant.

Submitted March 15, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John J. Dean* and *John H. Corbett, Jr.,* Assistant Public Defenders, and *George H. Ross,* Public Defender, for appellant.

*Robert L. Eberhardt* and *J. Kent Culley,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1973:

On November 16, 1971, the appellant, Charles McKinney, while assisted by self-retained counsel, entered a general plea of guilty to murder in Allegheny County.[1]

---

[1] Additional indictments charging McKinney with robbery, burglary and other related crimes were not disposed of.

After an extended evidentiary hearing before the Honorable Joseph H. RIDGE, McKinney was adjudged guilty of murder in the first degree. Post trial motions were filed and subsequently argued before a court en banc. The motions were denied and McKinney was then sentenced to prison for life. This appeal followed.

During the degree of guilt hearing, the Commonwealth was permitted to introduce into evidence, over objection, a recorded statement given by McKinney to the police. It is contended the court erred in not suppressing this statement[2] and that without this evidence the record does not sustain the finding of guilt of murder in the first degree.

Initially, we will summarize the Commonwealth's evidence at the hearing before the trial court.

On July 21, 1971, Shedrick Sutton, sixty-five years of age, was found dead on the floor in a bedroom of his residence in Pittsburgh. The room was in great disarray; the drawers of a dresser were pulled out and articles were scattered over the floor. The side door leading from the outside to the kitchen of the house was ajar and showed evidence "of recent pry marks". A post mortem examination established Sutton's death was caused by multiple fractures of the skull. A toxicology examination proved positive for alcoholic content of .32 percent ethanol.

On the evening of July 16, 1971, the appellant-McKinney borrowed a tire iron from a friend by the name of John Hardaway whose car was parked on the street in the vicinity of the Sutton residence. When asked by Hardaway what he was going to do with the tool, McKinney replied, "I know a man who keep a couple of grand. You don't have to do nothing. If I get it, I will split it with you." McKinney was then observed

---

[2] A pretrial motion to suppress this statement was denied after an evidentiary hearing.

by Hardaway proceeding to the Sutton property, and walking along the side of the house.

McKinney was taken into police custody on July 24, 1971, and gave a statement to the police wherein he said he entered the Sutton residence on July 16th, through a side window which he pried open with a borrowed tire iron "to get some money"; that he found Sutton lying on a bed mumbling to himself, and as McKinney was going through Sutton's pockets, the latter jumped up and grabbed him; that he panicked and hit Sutton over the head several times with the tire iron; that Sutton fell to the floor unconscious and Mc-Kinney took a ten and two one dollar bills from the bed, plus some clothing and then left.[3]

We turn now to the legal issue posed by this appeal, namely, the admissibility of McKinney's extra judicial statement. It is not asserted the challenged statement resulted from duress or coercion. In fact, at the suppression hearing McKinney admitted that he was not abused or threatened by the police and he told them what happened because, "It had been bothering me. . . . I wanted to get it over." It is also undisputed that before making any incriminating admissions to the police, McKinney was fully warned of his constitutional rights as mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). But, it is argued McKinney did not effectively waive his right to remain silent when questioned by the police because: (1) the police misled him into believing a witness had already told them he observed McKinney commit the crimes; (2) the police did not warn him of the possibility he would be charged with murder; and (3) the police did not

---

[3] McKinney's testimony at the degree of guilt hearing did not differ materially from his statement to the police, except in his testimony before the court, he denied entering the Sutton residence with any intent to steal. He said he only intended to borrow some money from Sutton whom he knew very well.

advise him of the felony-murder rule in Pennsylvania, i.e., that all murder committed in the perpetration of a burglary or a robbery is murder of the first degree.

We will discuss the first two contentions together and the pertinent facts are these.

During their investigation the police interviewed Hardaway and learned of McKinney's actions and words at and near the Sutton residence on the night of the homicide. An arrest warrant was then issued for McKinney charging him with the murder and robbery of Shedrick Sutton. Before being taken into police custody at his residence, McKinney was told by one of the arresting officers he was being charged with "the murder and robbery" of Shedrick Sutton. He was also given the warrant to read, which he did, and then said, "I know nothing about this". Thereafter, McKinney immediately was given the warnings required by *Miranda*. After this, one of the officers informed him, "We have a witness who had already given us an account of what occurred on the evening that Shedrick Sutton was killed and that we knew that we had the correct person." In reply, McKinney said, "I might as well tell you the truth then".

The complaint McKinney was not given sufficient information of the nature of the crime with which he was charged to aid him in making a knowing and intelligent waiver of his right to remain silent is without substance, factually or legally. See *Commonwealth v. Swint*, 450 Pa. 54, 296 A. 2d 777 (1972). The complaint McKinney was misled by the police into talking, likewise lacks factual foundation. At the time involved, as the record discloses, the police had already been informed by the witness, Hardaway, of McKinney's words and actions on the night of the crimes. Clearly, nothing the police told McKinney was false or constituted an improper influence.

The contention the police were required to advise McKinney of the felony-murder doctrine before any questioning is based on the false premise that "a confession is similar to a guilty plea" in court. It is true that before accepting a plea of guilty to a criminal offense, a court is required to explain the implications of the plea to the accused. However, the police are not expected to be learned in the law and are not required to warn one questioned about crime concerning the *implications* of self-incrimination, except to make it clear that anything said by the accused can be used against him later in court.

Finally, it is contended "the parts" of McKinney's statement "pertaining to the robbery" should not have been admitted "before a corpus delicti had been proven".

The corpus delicti may be established through circumstantial evidence. *Commonwealth v. May,* 451 Pa. 31, 301 A. 2d 368 (1973). The evidence herein, apart from that of McKinney's statement, was more than ample to establish Sutton met his death at the hands of another person who was perpetrating a felony.

Judgment affirmed.