Commonwealth *v.* Richman, Appellant.

168

Argued January 17, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

reargument refused February 3, 1975.

*Kenneth Mirsky,* Assistant Defender, with him *Jonathan Miller,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *James J. Wilson* and *James T. Ranney,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, May 22, 1974:

Appellant Leroy Richman was tried by a judge sitting without a jury and found guilty on charges of burglary and rape. After post-trial motions were denied, he was sentenced to from two to five years. On appeal, the Superior Court affirmed, *per curiam.* We granted allocatur limited to the issue whether there was a constitutional right to counsel at a pre-indictment lineup, and if so, whether that right was intelligently waived in this case.

Appellant was arrested at 9:30 A.M. on May 6th and taken to the 9th District Central Detective Division. He signed a written waiver of counsel, and at about 2:00 P.M. he was placed in a six-man lineup where the complaining witness identified him as her assailant. At trial, the complaining witness testified that on May 1, 1970, the appellant entered her apartment and forced her to submit to intercourse by threatening her with a knife. An in-court identification was made without reference to the lineup during the prosecution's case-in-chief.

Appellant now contends that he had a right to counsel at the lineup, that he did not waive that right, and that the in-court identification was tainted by the uncounseled lineup.

The United States Supreme Court first recognized a suspect's right to counsel at a pretrial lineup in *United*

*States v. Wade,* 388 U.S. 218 (1967). The policy behind the prophylactic exclusion of uncounseled lineups was explained as follows: "Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] . . . as at the trial itself.' Powell v. Alabama, 287 U.S. 45, 57 (1932)." (Footnote omitted). 388 U.S. 236-7. While Wade's indictment preceded his lineup, the indictment also preceded the arrest, and the Court's opinion did not specify precisely when the right to counsel attaches.

Five years later, a plurality of the Supreme Court of the United States in *Kirby v. Illinois,* 406 U.S. 682 (1972) declined to apply *Wade* to lineups occurring "before the commencement of any prosecution whatever." 406 U.S. at 690.[1] The decision in *Kirby* does not suggest that the rationale which spawned *Wade* is inapplicable to such lineups. Rather, *Kirby* was concerned with striking "the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." 406 U.S. at 691.

In attempting to reach this balance, the plurality noted: "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For

---

[1] Justice STEWART's opinion was joined by Chief Justice BURGER, Justice BLACKMUN, and Justice REHNQUIST. Justice POWELL, whose vote was necessary for affirmance, stated only, "As I would not extend the Wade-Gilbert *per se* exclusionary rule, I concur in the result reached by the Court." 406 U.S. at 691.

it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." (Footnote omitted) 406 U.S. at 689-690. Therefore, they held that the Sixth Amendment right to counsel applies only to lineups conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." 406 U.S. at 689.

*Kirby* does not establish an all inclusive rule; rather, the line to be drawn depends upon the procedure employed by each state. We are therefore faced with the issue of whether this lineup preceded the "initiation of adversary judicial proceedings" as defined in Pennsylvania. While the plurality in *Kirby* attaches some significance to the indictment, they specifically mention several benchmarks: "formal charges, preliminary hearing, indictment, information, or arraignment." 406 U.S. at 689. We are convinced that it would be artificial to attach conclusionary significance to the indictment in Pennsylvania.[2] Rather, we hold that *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970), appropriately draws the line for determining the initiation of judicial proceedings in Pennsylvania at the arrest.

As we noted in *Whiting,* the policy behind the *Wade* rule applies with equal force to all confrontations conducted after arrest. *Kirby* only instructs us to limit

---

[2] In fact, the electors of this Commonwealth have recently authorized the abolition of the indicting grand jury.

that rule where the limitation would benefit the interest of society in the prompt and purposeful investigation of an unsolved crime. In light of Pennsylvania's procedure, we find no countervailing benefit where the lineup occurs after arrest.

In reaching that conclusion, we note that the approval by a magistrate of a written complaint is at least as significant as the indictment in determining the commencement of adversary proceedings and the strength of the government's commitment to prosecute. See, *United States ex rel. Robinson v. Zelker,* 468 F.2d 159, 163 (2d Cir. 1972):

"Here the arrest warrant itself commanded that appellant be brought forthwith before the Criminal Court 'to answer the said charge, and to be dealt with according to law.' These were formal criminal proceedings, for the warrant had been signed by a judge based on an 'information upon oath' that appellant did commit the crimes of assault, robbery and possession of a dangerous weapon. This being true, Wade required counsel at the show-up". In Pennsylvania, magisterial approval of a complaint occurs either at the issuance of an arrest warrant, or, for warrantless arrests, at the preliminary arraignment. See, Pa. R. Crim. P. 130.[3] The reasoning of *Robinson* would clearly apply to both situations.

The case at bar, however, concerns a lineup conducted after a warrantless arrest and before the preliminary arraignment. Having determined that *Wade* protection must be provided subsequent to an arrest on a warrant, we must decide whether to distinguish arrests conducted without a warrant. We decline to do so for two reasons.

First, a warrantless arrest is justified only in the face of compelling exigent circumstances which pre-

---

[3] Effective January 1, 1974 Pa. R. Crim. P. 118 was renumbered in pertinent part as Pa. R. Crim. P. 130.

clude the police from going before a detached magistrate. See generally, *Wong Sun v. United States,* 371 U.S. 471, 479 (1963). Such exceptions do not remove the necessity of probable cause, they merely place the determination of probable cause in the hands of the police. While events may demand a procedural departure from the general requirement of a detached magistrate we must emphatically reject any attempt to use such exigent circumstances to create substantive benefits for arrests conducted without warrants. To allow uncounseled lineups between warrantless arrests and preliminary arraignment would only encourage abuse of the exigent circumstances exception and undercut our strong policy requiring warrants whenever feasible.

Equally as significant is the policy behind Rule 130, *supra,* requiring that the suspect "shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him." Under that Rule, filing of such a complaint must follow a warrantless arrest without unnecessary delay, and, as we have interpreted that phrase, only delays for routine police procedures—booking, fingerprinting, photographing, and the recognized administrative procedures are permissible.[4] *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). See also, *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); and *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973). Thus, we see no basis for distinguishing arrests with warrants and arrests without warrants

---

[4] Appellant does not contend that the lineup in this case was the product of an unnecessary delay and therefore improper under Rule 130 and *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). We are not referring to *Futch* for purposes of rendering the lineup invalid, but only to analyze whether appellant was entitled to counsel at the lineup.

for purposes of *Kirby*. In the former cases, the complaint will have already been filed, and in the latter, the complaint must be filed without "unnecessary delay" as we have defined the term.

The Commonwealth admits that its evidence against appellant prior to the lineup was sufficient to establish probable cause to arrest him, but it argues that it was "fairer" to conduct the lineup before giving him a preliminary arraignment. We cannot agree. After the arraignment, a lineup could have been conducted without encroaching on the principles of Rule 130 or the right to counsel enunciated in *Wade*. To draw a distinction between arrests with and without warrants would encourage police to ignore the mandate of Rule 130 and would not aid any legitimate police interest in facilitating the investigation of crime. We therefore do not feel that either the "committed to prosecution" standard or the "balance" mentioned in *Kirby* justify such a distinction. Since appellant was effectively under arrest at the time of this lineup, *Wade* and *Kirby* require that he be given a right to counsel at that time.[5]

The Commonwealth argues that even if appellant had a right to counsel at the lineup, his oral and written declarations establish that he waived that right. Appellant counters by asserting that such waiver was made without knowledge of the crime under investigation and was therefore not knowing and intelligent.

This Court has dealt with similar challenges to waivers of the right to counsel under *Miranda* on several occasions. See, *Commonwealth v. McKinney*, 453 Pa. 10, 306 A.2d 305 (1973) ; *Commonwealth v. McIn-*

---

[5] Neither the United States Supreme Court decision in *Wade* nor our decision in *Whiting* have been interpreted to require counsel at prompt on-the-scene identifications. *See, e.g., United States v. Sanchez*, 422 F.2d 1198 (2d Cir. 1970) ; *Russell v. United States*, 408 F.2d 1280 (D.C. Cir. 1969) ; *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1973). Our decision today should not be so interpreted.

*tyre,* 451 Pa. 42, 301 A.2d 832 (1973); *Commonwealth v. Swint,* 451 Pa. 54, 296 A.2d 777 (1972); *Commonwealth v. Boykin,* 450 Pa. 25, 298 A.2d 258 (1972); *Commonwealth v. Jacobs,* 445 Pa. 364, 284 A.2d 717 (1971); *Commonwealth v. Cooper,* 444 Pa. 122, 278 A.2d 895 (1971). In each of these cases, we alluded to the decision of three members of this Court in *Commonwealth v. Collins,* 436 Pa. 114, 121, 259 A.2d 160 (1969) which held that "an intelligent and understanding waiver of the right to counsel is impossible where the defendant has not been informed of the crime which is being investigated." However, in each case we determined that the suspect had been adequately informed of the general nature of the charges against him. These cases teach that while there is no need for the police to explain in detail all of the technicalities of the charges at issue, the accused in order to make a valid waiver of the right to counsel should at least know the general nature of the transaction giving rise to the charges.

In view of the lack of prejudice to legitimate law enforcement, and the obvious advantage to the accused in having this information, we would apply the above rule to waivers of lineup counsel as well as to *Miranda* waivers. Here the investigating detective admitted that he neither informed appellant of the charge against him or of the purpose of the lineup. A waiver under such circumstances is not knowing and intelligent.

Finally, the Commonwealth urges us to find that the in-court identification at issue here was not tainted by this illegal lineup. While testimony during the suppression hearing suggests strongly that there may have been an independent basis for the in-court identification, the hearing court, having concluded that the lineup procedure was not tainted, did not make a specific finding on this issue. See, *United States v. Wade, supra* at 240; *Commonwealth v. Futch, supra* at 396. We

therefore, remand the record to the lower court for a resolution of this issue.

The case is remanded for further proceedings consistent with this opinion.

Mr. Justice O'BRIEN, Mr. Justice ROBERTS and Mr. Justice MANDERINO join in this opinion.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

Although I concur in the result reached by Mr. Justice NIX, I totally disagree with his analysis of *Kirby v. Illinois,* 406 U.S. 682, 92 S. Ct. 1877 (1972).

Mr. Justice NIX makes the bold assertion: "Kirby does not establish an all inclusive rule; rather, the line to be drawn depends upon the procedure employed by each state. We are therefore faced with the issue of whether this lineup preceded the 'initiation of adversary judicial proceedings' as defined in Pennsylvania. While the plurality in Kirby attaches some significance to the indictment, they specifically mention several benchmarks: 'formal charge, preliminary hearing, indictment, information, or arraignment.' 406 U.S. at 689. We are convinced that it would be artificial to attach conclusionary significance to the indictment in Pennsylvania. Rather, we hold that Commonwealth v. Whiting, 439 Pa. 205, 266 A.2d 738 (1970), appropriately draws the line for determining the initiation of judicial proceedings in Pennsylvania at the arrest." [Footnotes omitted.] This interpretation of *Kirby* is without legal support.

The *Kirby* decision is a case involving the same question we are here concerned with, the plurality there stated: "In the present case we are asked to extend the Wade-Gilbert *per se* exclusionary rule to identification testimony based upon a police station showup that took place *before* the defendant had been indicted or otherwise formally charged with any criminal offense." *Id.*

at 684, 92 S. Ct. at 1879. The plurality proceeded to answer this question in the negative (they refused to extend the *Wade-Gilbert*[1] line); and, pertinently stated: "[W]hile members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all** of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of *formal charge, preliminary hearing, indictment, information, or arraignment.*" [* Emphasis in original] 406 U.S. at 689, 92 S. Ct. at 1882. It is clear in my mind that the plurality used the five underscored terms as synonyms. They were used to indicate the time when the accused is formally charged with the crime at a judicial proceeding and when the accused first begins his defense in an adversary judicial criminal proceeding. Jurisdictions vary on the terminology they employ to refer to the time when the accused is formally charged and when their adversary proceedings initiate;[2] and thus the reason for including the five different terms. However, these terms, as used, are not different in any

---

[1] *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967), and *Gilbert v. California*, 388 U.S. 263, 87 S. Ct. 1951 (1967), held "that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." *Id.* at 272, 87 S. Ct. at 1956.

[2] In Pennsylvania the adversary judicial proceedings, under the *Kirby* rationale, would appear to begin at the preliminary *arraignment* (which is prior to the charge by an indictment, but is the stage at which the accused is informed, at a judicial proceeding, of the complaint lodged against him). See Pa. R. Crim. P. No. 140 (Former Rule 119, which has been renumbered effective January 1, 1974). However, we need not here decide this issue, see discussion infra.

significant respect (other than semantically), as Mr. Justice NIX would lead us to believe. Thus, I believe it is ludicrous to say that under the *Kirby* test we can draw the *Wade-Gilbert* line at the arrest. The plurality explicitly refused to expand the *Wade-Gilbert* line to pre-indictment (pre-adversary proceeding) lineups. An arrest cannot be deemed to be an adversary judicial decision to proceed with the prosecution of the accused, that decision is not initially determined in this Commonwealth, until, at the earliest, the time of the preliminary arraignment.

My position is buttressed by the concurring and dissenting opinions in *Kirby*. Mr. Chief Justice BURGER in his concurring opinion stated: "I agree that the right to counsel attaches as soon as *criminal charges are formally made* against an accused and he becomes the subject of a *'criminal prosecution.'* " [Emphasis supplied.] *Id.* at 691, 92 S. Ct. at 1883. While Mr. Justice POWELL, concurring in the result, announced: "I would not extend the Wade-Gilbert *per se* exclusionary rule . . . ." *Id.* at 691, 92 S. Ct. at 1883. Finally, and most significantly, the dissenting opinion in *Kirby*, written by Mr. Justice BRENNAN in which Mr. Justice DOUGLAS and Mr. Justice MARSHALL joined, lucidly negated the argument here put forth by Mr. Justice NIX. Although the dissenters could not agree, nor can I, with the plurality's artificial line between post-charge (decision to prosecute) and pre-charge lineups, they clearly express the point that the plurality did not extend the *Wade-Gilbert* line to the time of arrest. Mr. Justice BRENNAN pertinently stated: "In view of Wade, it is plain, and the plurality today does not attempt to dispute it, that there inhere in a confrontation for identification conducted after arrest the identical hazards to a fair trial that inhere in such a confrontation conducted 'after the onset of formal prosecutorial proceedings.' *Id.*, at 1883. The plurality apparently considers an ar-

rest, which for present purposes we must assume to be based upon probable cause, to be nothing more than part of 'a routine police investigation,' *ibid.,* and thus not 'the starting point of our whole system of adversary criminal justice,' *id.,* at 1882. An arrest, according to the plurality, does not face the accused 'with the prosecutorial forces of organized society,' nor immerse him 'in the intricacies of substantive and procedural criminal law.' Those consequences ensue, says the plurality, only with '[t]he initiation of judicial criminal proceedings' '[f]or it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified.' *Ibid.*" [Footnotes omitted.] *Id.* at 697-98, 92 S. Ct. at 1886-87.

Moreover, both federal[3] and state[4] courts, as well as legal scholars,[5] have adopted the position which I now

[3] *United States v. Lemonakis,* 485 F.2d 941 (D.C. Cir. 1973) ; *Dodge v. Johnson,* 471 F.2d 1249 (6th Cir. 1972) ; *United States v. Abshire,* 471 F.2d 116 (5th Cir. 1972) ; *United States v. Miramon,* 470 F.2d 1362 (9th Cir. 1972) ; *United States v. Savage,* 470 F.2d 948 (3d Cir. 1972) ; *United States v. Coades,* 468 F.2d 1061 (3d Cir. 1972) ; and, *Moore v. Eyman,* 464 F.2d 559 (9th Cir. 1972).

[4] *Houston v. State,* 49 Ala. App. 403, 272 So. 2d 610 (1973) ; *State v. Money,* 110 Ariz. 18, 514 P. 2d 1014 (1973) ; *People v. Chojnacky,* 8 Cal. 3d 759, 505 P. 2d 530, 106 Cal. Rptr. 106 (1973) ; *People v. Montgomery,* 9 Ill. App. 3d 896, 293 N.E. 2d 340 (1973) ; *State v. Jackson,* 199 N.W. 2d 102 (Iowa 1972) ; *State v. Jefferson,* 284 So. 2d 577 (La. 1973) ; *Jackson v. State,* 17 Md. App. 167, 300 A.2d 430 (1973) ; *Hobson v. State,* 285 So. 2d 464 (Miss. 1973) ; *State v. Gant,* 490 S.W. 2d 46 (Mo. 1973) ; *Robinson v. State,* 482 S.W. 2d 492 (Mo. 1972) ; *State v. Earle,* 60 N.J. 550, 292 A.2d 2 (1972) ; *People v. Parish,* 70 Misc. 2d 577, 333 N.Y.S. 2d 631 (1972) ; *Baker v. State,* 88 Nev. 369, 498 P. 2d 1310 (1972) ; *State v. Sheardon,* 31 Ohio St. 2d 20, 285 N.E. 2d 335 (1972) ; *Stewart v. State,* 509 P. 2d 1402 (Okla. Cr. 1973) ; *Chandler v. State,* 501 P. 2d 512 (Okla. Cr. 1972) ; and *State v. Taylor,* 60 Wis. 2d 506, 210 N.W. 2d 873 (1973).

[5] N. Sobel, Eye Witness Identification (1972).

180

adhere to, which is: "The Supreme Court [in *Kirby*] has recently held that the critical time for triggering the Sixth Amendment right to counsel at identification is after indictment [formal charge, preliminary hearing, information or arraignment]." *United States v. Alston,* 483 F.2d 1264, 1265 (D.C. Cir. 1973). In other words after the initial decision to prosecute has been made. At that time and only at that time, according to the plurality in *Kirby,* is the accused "faced with the prosecutorial forces of organized society." *Id.* at 689, 92 S. Ct. at 1882. Until that time, the accused's rights are protected by *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967 (1967). In contradistinction to this abundance of authority, Mr. Justice NIX is able to cite only one decision in support of his position.[6]

---

[6] The majority relies upon *United States ex rel. Robinson v. Zelker,* 468 F.2d 159 (2d Cir. 1972). *Robinson* held that the issuance of an arrest warrant under the old section 144 of the New York Code of Criminal Procedure, was tantamount to the initiation of the adversary judicial proceedings. Thus, it seemingly held that the beginning of the adversary proceeding was not necessarily the equivalent of being formally charged (using the term in its fullest *Kirby* sense, supra). However, in so ruling, the court placed great emphasis upon the precise wording of the former criminal code provision. The court there stated:

"Section 144 of the New York Code of Criminal Procedure (as amended in 1967), which was in effect at all times here relevant (the New York Code of Criminal Procedure was repealed and replaced by the New York Criminal Procedure Law in 1971) provided that: 'A *prosecution is commenced,* within the meaning of any provision of this act which limits the time for commencing an action, *when an information is laid before a magistrate charging the commission of a crime and a warrant of arrest is issued by him,* or when an indictment is duly presented by the grand jury in open court, and there received and filed.'" (Emphasis supplied.)

"It is difficult to perceive any basis upon which commencement of a prosecution for the purposes of the statute of limitations is not commencement for other purposes as well, including the commencement of adversary judicial criminal proceedings within Kirby. Kirby states, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411, and

While I do not agree with the *Kirby* rationale put forth by the majority; I nevertheless reach the same result, because I would adopt a higher standard of law than that mandated by the *Kirby* decision. This Court has it well within its power to establish a higher standard of constitutional protection than that afforded by the United States Supreme Court where the rights of an individual are threatened.[7] I deem this an appropriate case to exercise our power, and choose to do so for the following reasons. The artificial distinction drawn by the plurality in *Kirby,* between post-charge

presumably the dissent in this case would concede, that the filing of an indictment is the initiation of 'adversary criminal proceedings.' *The issuance of a warrant of arrest upon an information is the exact equivalent of the filing of an indictment and, in fact, they are explicitly equated by Section 144.* Under New York law, the degree of prosecutorial discretion to proceed to trial under either appears to be equivalent; for example, under the statutes now in effect both can be dropped only with court approval, *compare,** New York Criminal Procedure Law, §170.40 (McKinney 1971) ; *with** id. §210.40, and there is every reason to suppose that this has always been the case. *Cf.* New York Code of Criminal Procedure, §671 (McKinney, 1958). *Under both 'a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'* Kirby, 406 U.S. at 689, 92 S. Ct. at 1882." [*Emphasis in original.] *Id.* at 160-61, n. 2.

Therefore, the court, itself, there distinguished the *Robinson* case from the case presently at bar.

Moreover, in my research, I have discovered two states (Oklahoma and Wisconsin) recognizing that counsel is not constitutionally mandated at post-indictment lineups, but do nevertheless express the view that the superior position is to allow counsel, whenever possible, to be present at *any* lineup. *Chandler v. State,* supra, and *State v. Taylor,* supra. However, the courts in Oklahoma have not enforced this position; but, merely follow the minimum constitutional requirement as mandated by *Kirby.* See *Stewart v. State,* supra.

[7] For our authority to so do, see *Cooper v. California,* 386 U.S. 58, 87 S. Ct. 788 (1967), and *Commonwealth v. Campana* (2), 455 Pa. 622, 314 A.2d 854 (1974) and cases cited therein.

and pre-charge lineups is unwise and infringes upon the protections society should grant an accused. To force an accused to stand alone against the full force and investigative powers of organized society, until he is actually charged with the commission of the crime, is an outrageous injustice. The accused's liberty is equally jeopardized by a pre-charge lineup, as it is by a post-charge lineup. Thus, I consider the line as laid down in *Kirby* to be arbitrary and unfounded. To follow the constitutional mandate of *Kirby* would be to encourage the law-enforcement personnel of this Commonwealth to hastily conduct all lineups prior to the institution of the "adversary judicial criminal proceedings," (see footnote 2, supra). Thus, it is my strong feeling that the superior procedure is to grant the right to counsel at all lineups subsequent to arrest, with the exception of immediate on-the-scene identifications.[8] Moreover, this opinion, although not in accord with *Kirby*, is consistent with that opinion, in that: at the arrest the accused is, in actuality, informed for the first time of the charges for which he is being investigated and is the initial point in our "accusatory" criminal process. Hence, it is a meaningless distinction to postpone the granting of the right to counsel at lineups until the "official" initiation of the judicial criminal process.

I do not feel the need to further explain the reasoning behind my opinion, due to the fact that this position is convincingly and lucidly presented by Mr. Justice BRENNAN in his dissenting opinion in *Kirby*.[9] I only wish to emphasize the fact that I cannot see any legal

---

[8] For cases dealing with on-the-scene identifications, see *United States v. Savage*, supra; *United States v. Canty*, 469 F.2d 114 (D.C. Cir. 1972); *United States v. Gaines*, 450 F.2d 186 (3d Cir. 1971); and *Russell v. United States*, 408 F.2d 1280 (D.C. Cir.), cert. denied, 395 U.S. 928, 89 S. Ct. 1786 (1969).

[9] Also see *State v. Taylor*, supra, and *Chandler v. State*, supra, discussed in footnote 6.

justification "for concluding that a post-arrest confrontation for identification, unlike a post-charge confrontation, is not among those 'critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality.' . . . [*Wade*] at 224, 87 S. Ct. at 1930." *Id.* at 699, 92 S. Ct. at 1887.

Mr. Chief Justice JONES joins in this concurring opinion.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I readily join the opinion of the Court. And I agree with the concurring opinion of Mr. Justice EAGEN to the extent that it asserts as a matter of state law, see *Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738, cert. denied, 400 U.S. 919, 91 S. Ct. 173 (1970); Pa. Const. Art. I, § 9, that in this Commonwealth arrest is the initial point of the accusatory criminal process. In the view of both the majority and Mr. Justice EAGEN—a view that I share—an accused is entitled to counsel at any lineup conducted after arrest.

Mr. Justice MANDERINO joins in this concurring opinion.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

Under the facts of the present case, I am in agreement that the defendant was entitled to counsel at the line-up, which occurred 4½ hours after his arrest. Because, however, the principles which lead me to that conclusion differ substantially from those expressed in both the majority and concurring opinions, I find it necessary to concur separately.

I am in basic disagreement with the majority's holding that, as a matter of federal constitutional law, the right to counsel at a pre-trial lineup attaches upon arrest. To be sure, such a rule does assure counsel in

many cases in which, as in the one before us, the confrontation between the accused and the witness occurs a substantial period of time after the incident (in the case at bar, five days after), and the delay necessary in order to obtain counsel is unlikely to affect the accuracy of the identification or the efforts of the police to apprehend the responsible person. A totally different situation, however, is presented when a suspect is apprehended within a few hours of the crime. In that situation, a prompt confrontation increases the likelihood of an accurate identification.[1] *Russell v. United States,* 408 F.2d 1280, 1284 (D.C. Cir. 1969); *see also Commonwealth v. Mackey,* 447 Pa. 32, 36, 288 A.2d 778 (1972); *Commonwealth v. Hall,* 217 Pa. Superior Ct. 218, 226-28, 269 A.2d 352 (1970); F. Levine and J. Tapp, *The Psychology of Criminal Identification: Wade to Kirby,* 121 U. Pa. L. Rev. 1079, 1101 (1973). The difficulty with the rule espoused by the majority is that it provides no basis for distinguishing between confrontations which take place shortly after a crime and those occurring days later.

The source of this difficulty is the broad definition which in Pennsylvania we have given to "arrest". In *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), we stated that an arrest was accomplished by " 'any act that indicates an intention to take [a person] into custody and that subjects him to the actual control

---

[1] A prompt confrontation also allows the police to continue with their investigation, if the wrong person is mistakenly apprehended, and to terminate the investigation upon obtaining an identification. Terminating the investigation is itself an important consideration; it not only permits the police to use their resources elsewhere, but it also limits the intrusions into the privacy of uninvolved individuals which can accompany any investigation. *See Simmons v. United States,* 390 U.S. 377, 384-85, 19 L. Ed. 2d 1247, 1253 (1968); A Model Code of Pre-Arraignment Procedure, Tentative Draft No. 6, §160.2(1)(a), and commentary thereto, p. 214 (American Law Institute, April 1, 1974).

and will of the person making the arrest:' 5 Am. Jur. 2d, Arrest, §1, p. 695" (411 Pa. at 68). In that case, we held that a person seated in a bar was arrested at the point at which he was ordered to stand and turn around. Similarly, in *Commonwealth v. Sharpe,* 449 Pa. 35, 41, 42, 296 A.2d 519 (1972), we held that a suspect was under arrest when he was ordered to stop, approach the police car, and display the contents of a bag which he was carrying. *See also* the recent case of *Commonwealth v. Hall,* 456 Pa. 243, 249, 317 A.2d 891 (1974), wherein the Court seemingly held that an arrest occurred when the suspect was taken to a near-by police station for an immediate confrontation.

The import of these decisions is that any person who is or may be a suspect and who is taken back to the scene of the crime, or to a hospital, or to a police station, must be deemed "arrested". Requiring counsel at every post-arrest confrontation, consequently, virtually eliminates the possibility of on-the-scene identifications, even though such confrontations come within an exception to *Wade* which was widely recognized even before *Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed.2d 411 (1972). *See Commonwealth v. Ray,* 455 Pa. 43, 48-49 n. 2, 315 A.2d 634 (1974) (plurality opinion); Model Code of Pre-Arraignment Procedure, Tentative Draft No. 6, §160.2(1)(a), and commentary thereto, at p. 215 (American Law Institute, April 1, 1974).

So broad a rule is certainly not necessary for decision of the case at bar, nor, as my brother Eagen demonstrates in his separate concurrence, is it required by *Kirby.* Similarly, the rule now adopted by the Court is not required by our decision in *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970). In that case, we emphasized (by italicizing the word *"after"*, 439 Pa. at 207) the fact that the accused there, like the accused in *Wade,* had in fact already been arrested when the challenged identifications took place, but there

was no discussion whatever of the significance of that fact; nor, contrary to the majority suggestion, was there any determination that arrest marks the initiation of adversary judicial proceedings—the *Kirby* guidepost—in Pennsylvania.[2] Indeed, *Whiting* was decided before *Kirby,* and was grounded entirely upon the critical stage analysis in *Wade. See* 439 Pa. at 208-210. That approach has, of course, been refined, and no doubt limited, by *Kirby. See Kirby v. Illinois, supra,* at 688 (plurality opinion of Mr. Justice STEWART) and 696-699 (dissenting opinion of Mr. Justice BRENNAN).

In *Commonwealth v. Ray, supra,* we held that a defendant did not have a Sixth Amendment right to counsel at a pre-arrest confrontation of a suspect who had been detained for investigation shortly after commission of a crime.[3] We left to another day determination of whether, in Pennsylvania, adversary judicial proceedings, in the *Kirby* sense, commence with a formal arrest, or at some other point. 455 Pa. at 49-50. It is my present view that the institution of "adversary judicial proceedings" under Pennsylvania criminal procedure occurs not later than the preliminary hearing (*see* Pa. R. Crim. P. 120), for it is then that the Commonwealth, through the district attorney, must decide whether to recommend discharge of the accused or to endeavor to make out a prima facie case against him. [Our rule expressly provides that an accused is entitled

[2] I note that Mr. Justice ROBERTS, in his concurring opinion, *supra,* p. 183, uses the phrase "accusatory criminal process". This does not, to me at least, denote the same thing as the *Kirby* expression, but, in any event, *Whiting* did not depend on any such determination.

[3] In *Commonwealth v. Ray,* the opinion announcing the decision of the Court expressed the views of Mr. Justice POMEROY, joined by Mr. Chief Justice JONES. Mr. Justice EAGEN and Mr. Justice O'BRIEN concurred in the result; Mr. Justice ROBERTS, Mr. Justice NIX and Mr. Justice MANDERINO dissented.

to counsel at this hearing, and it is, of course, a "critical stage" under *Coleman v. Alabama,* 399 U.S. 1, 10, 26 L.Ed.2d 387, 397 (1970).] It is, however, a tenable position, which Mr. Justice EAGEN espouses, that the preliminary arraignment, required by Pa. R. Crim. P. 119, marks the commencement of such proceedings. The preliminary arraignment precedes the preliminary hearing by three to seven days. While the district attorney is not present, and no decision whether or not to prosecute is then made, the accused is, of course, then in custody of the police before a magistrate, is furnished with a copy of the complaint against him, and is informed of his rights to counsel, to a preliminary hearing, and to bail.

However that may be, as Mr. Justice EAGEN has observed in his present concurrence, and as this writer noted in *Commonwealth v. Ray, supra,* at 49-50 n. 4, we are not obliged to limit Pennsylvania requirements to the minimum which is required by the federal constitution. If, however, we are to formulate a state right to counsel at pre-trial line-ups which is broader than the federal requirement as set forth in *Kirby* (and I can see merit in so doing), I would not do so as a matter of state constitutional law. Our Court has a well-founded reluctance to decide issues of constitutional law when disposition can be had on some other adequate ground. I observed in a similar situation to that now before us, "As we are empowered to adopt rules of criminal procedure, it is both unnecessary and unwise for us to proceed by the more rigid and inflexible route of constitutional adjudication. We have only recently recognized that the rule-adoption route is the better alternative. Commonwealth v. Milliken, 450 Pa. 310, 300 A.2d 78 (1973). Cf. Commonwealth v. Phelps, 450 Pa. 597, 301 A.2d 678 (1973)." *Commonwealth v. Campana,* 452 Pa. 233 at 270, 304 A.2d 432 (1973) (POMEROY, J., dissenting).

This approach is particularly desirable in dealing with the present problem, where the endeavor is to strike the right balance between police procedures and fairness to a criminal suspect. The degree to which extending a right to counsel to a pre-preliminary arraignment (or pre-preliminary hearing) confrontation creates an unwarranted interference with proper police investigation is primarily a factual matter. All the relevant facts are not known, at least to me, at this writing. I believe we should retain the flexibility which a rule permits to reevaluate and change the procedures as time goes on without the constriction of a constitutional principle, whether state or federal. By the same token, we avoid the difficult problems of retroactivity which attach to constitutional pronouncements.

In sum, I would favor a rule which would allow a person who has been arrested to have counsel at a line-up which occurred thereafter, except as to those confrontations which take place within a short period of time after commission of a crime.[4]

---

[4] The American Law Institute's tentative draft of rules pertaining to identification procedures is, in my view, a helpful contribution to the thinking on this subject, and worthy of our serious consideration. *See* A Model Code of Pre-Arraignment Procedure, Tentative Draft No. 6, Part IC (April 1, 1974). Sections 160.2 and 160.3 are particularly pertinent to the subject matter of the instant opinions.