## Commonwealth v. Morgan

*Mark A. Sereni, assistant district attorney,* for the Commonwealth.

*Stephen T. Martin,* for defendant.

SURRICK, *J.,* May 23, 1991—On October 24, 1988, defendant Kenneth Morgan was arrested by officers of the Yeadon Borough Police Department and charged with the crimes of robbery (two counts),[1] theft by unlawful taking or disposition (two counts),[2] theft by receiving stolen property (two counts),[3] terroristic threats (two counts),[4] and criminal conspiracy (on all charges).[5]

On July 21, 1989, defendant filed an omnibus motion to suppress certain statements made by him to the police. A suppression hearing was held on October 4 and 5, 1989. On October 11, 1989, this court entered an order suppressing the statements taken from defendant by Detective Costello of the Yeadon Borough Police Department on October 18, 1988, and October 24, 1988. The Commonwealth filed a notice of appeal from this order, thus necessitating this opinion.

Based upon the evidence and testimony presented at the suppression hearing, we found the following facts:

(1) On October 18, 1988, at approximately 11 a.m., Detective William Costello of the Yeadon Borough Police Department telephoned the defendant, Kenneth Morgan, at his home and requested that he come in to the police station to be questioned regarding his knowledge about a stolen vehicle. The

1. 18 Pa.C.S. §3701.
2. 18 Pa.C.S. §3921.
3. 18 Pa.C.S. §3925.
4. 18 Pa.C.S. §2706.
5. 18 Pa.C.S. §903.

defendant cooperated and voluntarily arrived at the police station within minutes.

(2) Detective Costello began the questioning of the defendant by advising him that the police had found his fingerprints on the inside of a stolen vehicle. Detective Costello then advised the defendant of his rights under *Miranda*.

(3) In response to Detective Costello's questions, defendant admitted that he had committed the theft of the vehicle.[6]

(4) After defendant had admitted the car theft, Detective Costello began questioning him regarding a series of crimes, referred to as the "pizza robberies." Detective Costello did not advise defendant that he was a suspect in these "pizza robberies" nor did he give defendant any *Miranda* warnings before beginning the questioning about the "pizza robberies." In response to Detective Costello's questions, defendant admitted his participation in these crimes and gave Detective Costello other information concerning these crimes. He also gave Detective Costello information about a homicide. As the defendant related information concerning these crimes, Detective Costello took notes on an interview sheet.

(5) At the end of the interview on October 18, Detective Costello permitted defendant to leave the police station without arresting him for the motor vehicle theft or the "pizza robberies." Defendant was permitted to leave, with the understanding that he would cooperate with the police in their investigation of the "pizza robberies" and the homicide.

---

6. Defendant ultimately entered a plea of guilty to theft by receiving stolen property as it related to this vehicle, under Information no. 7579A-88. He was sentenced to a period of incarceration of not less than 15 months nor more than 36 months.

(6) Over the next several days, the defendant met with Detective Costello and Officer Boyden and related additional information to them regarding these crimes. During one of these meetings, Officer Boyden actually gave the defendant $20.

(7) On October 24, Detective Costello again telephoned the defendant and requested that he come in to the police station. The defendant obliged. Upon defendant's arrival, Detective Costello advised the defendant of his *Miranda* rights with regard to the "pizza robberies." Detective Costello then went on to take a signed written statement from the defendant regarding his involvement in these robberies.

(8) After defendant signed this statement, he was formally charged with the instant crimes known as the "pizza robberies."

(9) After being given his *Miranda* warnings, but before taking any statements from defendant, as an inducement to defendant to give these statements, Detective Costello told defendant that he would tell the district attorney of defendant's cooperation with the police and that he also would help the defendant get into the Navy. Detective Costello also advised defendant's mother that he would advise the district attorney of defendant's cooperation.

Defendant contends that the statements which he gave to Detective Costello must be suppressed because he was induced to make these incriminating statements by promises of benefits and special considerations. We are compelled to agree.

In the case of *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 209 (1989), the Supreme Court of Pennsylvania held that promises made by police that induce admissions of guilt are impermissible inducements that taint a defendant's confession. In so holding, the court made the following statement:

"In the present case under review, we hold that the statement by the authorities to Griggs was an impermissible inducement and thereby tainted his admissions. *By conveying the distinct impression that the district attorney would be told of his cooperation in giving a confession on the spot,* there occurred an inescapable inducement which cannot be condoned under our law. For while we recognize that the police have a legitimate responsibility to conduct investigations, including interrogations, criminal suspects have a constitutional right to make up their own minds as to whether they want the *Miranda* protections. Promises of benefits or special considerations, however benign in intent, comprise the sort of persuasion and trickery which easily can mislead suspects into giving confessions. The process of rendering *Miranda* warnings should proceed freely without any intruding frustration by the police. Only in that fashion can we trust the validity of subsequent admissions, for if the initial employment of *Miranda* is exploited illegally, succeeding inculpatory declarations are compromised. Misleading statements and promises by the police choke off the legal process at the very moment which *Miranda* was designed to protect." (emphasis supplied)

In *Gibbs,* the inducement made by the police officer to the defendant was that the officer would tell the district attorney that defendant had cooperated with the police.[7]

In the instant case, Detective Costello told defendant that he would advise the district attorney that

---

7. The exact statement by the police officer in *Gibbs* was:

"The only thing is I would tell the district attorney you cooperated for whatever good that would be, but I have no idea whether it would help your case or not."

The court held that this inducement was impermissible and that the statement made by defendant after receiving this inducement must be suppressed.

defendant had cooperated with the police. He also told defendant that he would help defendant get into the Navy. We do not see how these inducements can be distinguished from the inducement in *Gibbs*. Moreover, in the instant case, the conduct of the police, after making these inducements, was certainly designed to reinforce the verbal inducements that were made. Notwithstanding the fact that defendant had admitted to committing several crimes, Detective Costello allowed him to leave the police station without charging him with a crime. Thereafter, over the next several days, Detective Costello and Officer Boyden met with defendant on several occasions for the purpose of exchanging information. On one of those occasions, defendant was even given money. We are satisfied that the promises of special consideration made by Detective Costello, along with the police conduct in this case, are exactly what Justice Papadakos and the majority in *Gibbs* were referring to when they mentioned the promises of benefits or special considerations which "comprise the sort of persuasion and trickery which easily can mislead suspects into giving confessions." Accordingly, we concluded that all statements made by defendant on October 18 and October 24, as a result of these inducements, must be suppressed.[8]

---

8. We would also note that the statement taken on October 18, 1989, concerning the "pizza robberies," might very well be suppressed under *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974).